And our final case this afternoon is number 232244, United Services Automobile Association v. PNC Bank N.A. Mr. Rowles. May it please the Court, Anthony Rowles for USAA. This appeal as to the 136 patent presents two discrete issues. The first is the Board failed to address the dance reference, which was record evidence of prior art introduced in the patent owner response that taught away from the asserted combination of Garcia's mobile phone camera with Richardson's OCR of the routing number on the check, which is a requirement of all the claims. The claim set one requires specifically OCR of the routing number. Claims 14 through 18 require OCR of deposit information, which the Board construed to include the routing number as well as other information. Garcia admittedly doesn't teach determining this routing number or other information via OCR. They relied on Richardson for that. And the dance reference specifically teaches that relying on optical character recognition to obtain information from a document captured by a handheld camera, as opposed to a scanner or a mounted device, won't work. The image will appear acceptable to the user. The user will perceive it as being of adequate resolution and looking acceptable. What's the date of the dance reference? 2000. And the date of Garcia? Garcia is, I believe, 2004 or 2005. So it dances prior to Garcia, Your Honor. So technology changes. It does, and perhaps the Board could have relied on that in assessing dance. It did not. There was no finding in the final written decision about the evolution of technology, about the applicability of dances teaching away to Garcia at the time of the invention. The final written decision is simply absent of any discussion of dance, of the teaching of dance, and its applicability to the combination asserted here. And so that on its own is an error of the Board. When a patent owner makes of record prior art that teaches away from the asserted combination, in the patent owner response, the Board must address it. It does not need necessarily to accept it as excluding obviousness, but it must address it and explain why the dance reference would not negate the motivation to combine the references presented in the petition. It failed to do so here. And the second error made by the Board relates just to claims 14 through 18 of this patent, and those are the claims that have the signature identification procedure limitation. And so the claims as construed by the Board, and no one disputes the claim construction, limit the invention to performing a specific process on the back of the check. It has to detect a mark in a particular location on the back of the check, the endorsement location, and without performing a quote-unquote signature identification procedure, which has been construed to include identifying the presence of a signature on the back of the check. And so the claim, when you put all that together, the claims describe this process where rather than looking for a signature on the back of the check, you look for the presence of a  But Randall doesn't look just for a signature, he looks for an endorsement, which could be a signature or some other mark, right? Randall teaches looking for an endorsement, and as the petition says, an endorsement search is what's taught by Randall and is going to be combined into the Garcia reference. It's indisputed that in the vast majority of cases, an endorsement was understood to be a signature, but that in certain cases, in commercial checks, a stamp could be used in lieu of a signature, so I agree with your Honor on that. But if we look at Randall's teaching to search for the endorsement on the back of the check, it's teaching a process to look for something specific, to look for an endorsement, which is a signature or potentially something used in lieu of a signature, a stamp. That's different from what's recited in the claim, which is to look simply for a mark in a particular area on the back side of the check. Looking for a stamp isn't looking for a signature. I agree that a stamp is not a signature. That's true. What Randall does not teach is just looking for a stamp. There's no suggestion of that. There's no argument made by Petitioner that Randall teaches alternatives. You could look for a signature or a stamp. The admission by P&C in the red brief at 39 is that in the vast majority- You mean that you read the claim as saying it's looking for a mark, it's not a signature? Looking for a mark is something different from looking for a signature, or looking for a mark- But a signature can be a mark. I think, to be precise, one makes a signature by making marks or a series of marks on the back of a check. I don't think I would agree that a signature is a mark. Maybe it's comprised of marks. But the process claimed in the patent is, rather than looking for something specific like a signature, the mere presence of a mark, it could be a stray mark, it could be an X or a stray pencil mark, if it's in the endorsement location, would be enough to pass that step of processing in the claimed invention. That would not be the case for Randall. Randall would not find an endorsement, and so Randall would reject the check. Conversely, you could have situations where the patent intervention differs from Randall. There could be a signature that's not in the endorsement location. The 136 patent would not consider that as passing its processing step. Randall would, because it would find the endorsement on the back of the check. These are simply two different processes, and the patent identifies this different process as being advantageous. This is at Appendix 96 in the 136 patent, Column 10, Lines 2 through 6, when it explains this alternative embodiment of looking for—in the specification, it says looking for just a mark or signature. What ends up getting claimed is just a mark. In the endorsement location on the back of the check, without conducting any further signature identification procedures, that avoids the problem of trying to look for something like a signature that's sometimes illegible. You can't tell what it is. You can't tell that it's a signature. Using the claimed process, you avoid that problem. You're looking for just the presence of a mark at the cost, perhaps, of false positives where you detect a stray pen stroke as an endorsement, but that's considered something that's advantageous of the invention. That's simply not taught by Randall. Importantly, there's not an argument in the petition that a person of skill would have modified Randall to say, well, let's just look for stamps, or let's just look for a certain type of stroke and not a signature. That's not the argument the petitioner made. In fact, the petition's theory was that it was—that Randall taught two different things you could do. You could look for a signature on the front side of the check, and you could also optionally compare it to one that's on file. And the petition reasoned that the same would apply to the back side of the check. You could look for the endorsement, but not necessarily compare the signature to that on file, and that would be advantageous because you avoid this complex process of looking up the signature that's on file. That was the theory presented in the petition. The claim, as construed, doesn't require that. The signature identification procedure that's excluded from the claim is broader than looking up a signature on file. It includes even looking for the presence of a signature at all. And so that results in this flaw in the petition, which the board ignored in its decision. What the board did was say, well, Randall doesn't specifically say, look for a signature, and that's enough to satisfy the claim limitation. But Randall is teaching looking for an endorsement known to be a signature or potentially a stamp in lieu of a signature, so it's at least going to be looking for the presence of a signature on the back of a check. And that puts it outside of the scope of the 136 bank claims. As to the teaching away point, I think the problem here is that there's a lot of evidence in the record about, and we've heard about it today, evidence in the record about difficulties with using a camera phone and an image captured by a camera phone for deposit of a check. And in this case, the combination asserted is slightly different from some of the other cases. They've combined Garcia with this patent Richardson. And Richardson is describing a commercial bank processing system where high-speed scanners are taking images of checks, and it's reading information from the checks and processing it. And so when you can, now Petitioner argues that nonetheless, a person of skill would have thought you could apply that technology to Garcia's images, and they're within the right to argue that, but when other evidence of record of the prior art says, while those techniques work for scanners, which is what Dance says, while those techniques work for flatbed scanners, when you attempt to do it with a handheld camera without using other techniques described in Dance, which aren't in the combination, then what happens is the user will believe the image is adequate, in this case, submit it for deposit, only to learn later that the processing cannot be performed. And then, Dance explains, the user will be unlikely to ever use such a system again, because they sent an image they believed to be adequate for processing and only learned later that it was inadequate for processing. These are teachings that would specifically discourage a person of skill from making this combination of the camera deposit system with Richardson's scanner-based OCR of the critical check information. And the board, you can search the entire final written decision, you won't find any mention of those teachings. The closest the board comes to addressing this issue is, it refers to an argument made by USA that a prior board decision with a petitioner called MITAC involved the Dance reference. And the board says, well, we put no weight on the MITAC decision, because it was a different reference, different art. Yes, you have to come again. Okay, a couple things. One, can you just confirm that you're not cutting off the mic that is being to me? I'm getting a lot of feedback. That's one of the minor things with the paper. And I totally get it. I've been in your shoes arguing. My apologies. I'll hear you clearly. In this case, the fact that the MITAC panel came out another way on an institution decision, we place no weight on that. We're not arguing that that's a basis to find error in this panel decision. We did argue that in the preliminary response, unsuccessfully. When we got to the patent owner response, what we said is, well, let's look at the Dance reference on its own. It's prior art. It's of the time, within a few years. And the teachings of that reference directly contradict the stated motivation to combine in this case. And that's a reason why the prior art teaches away from the combination. When we got to the final written decision, the board didn't address that argument. They just repeated what they said in the institution decision, that MITAC is different. The panel was addressing a different combination. The Singfield reference was at issue. In the MITAC reference, there were a lot of differences. But that's immaterial to the argument that we're making here. The prior art of record is Dance. It's material to the combination. It refutes the motivation to combine. It needed to be addressed by the board here on its own merits, regardless of what the prior panel in an institution decision said or didn't say. And now, that being said, the findings of the prior panel were that Dance taught away from using a camera to take images of a check and deposit it. So we're consistent with what the board found before. But that's not, the court need not go there on this appeal. The Dance reference on its own is record evidence in support of patent and response and patenters theory unaddressed by the board. And that is something that the board is not within its rights to do. It cannot simply ignore a substantive argument made in the patent and response without explaining why it finds it not persuasive, why it finds it waived, some reason why. It has to address every single argument. I think there's a threshold, and this court's cases indicate that. But again, this is not a footnote where we said, you know, CEG Dance in the MITAC IPR. This is four pages of the patent and response going through the teachings of Dance and explaining why they resulted in, quote, no motivation to combine Garcia with Richardson. This is on the other side of that line where it's a substantive argument that the board needed to address to explain why Dance didn't contradict the motivation to combine. Not that literally everything in a patent and response needs merits of response, but I think this was a significant argument in the patent and response that required such an adjudication. I see I'm into my rebuttal time, if there are any. I'm going to give you two minutes. Thank you, Ron. Mr. Danford. Good afternoon again. Andrew Danford for PNC. I'll start with the issue with respect to the Dance reference and direct the court to appendix page 40, where the board discussed the MITAC proceedings and the art and arguments that were raised in those proceedings and distinguished it from the art and arguments that are at issue here, because this proceeding involved the disclosures in Garcia, which has the explicit disclosure of check images captured by a mobile phone that are then processed by OCR. The board, when it was talking about MITAC, was describing the Dance reference in exactly the same way that the patent owner's response did, and I would direct you to pages 596-598 of the appendix, where USAA addresses the Dance reference, specifically citing to MITAC. And so it's clear when you read the patent owner's response against the final written decision that what the board is talking about at page 40 of its final written decision is addressing those arguments with respect to Dance and explaining why they don't change the outcome here. And I'd also make the point, too, and I think this is why, part of the reason why the board stated that the Dance reference and the art at issue in the MITAC proceeding don't change the outcome here is because we don't need a motivation to combine to get a check image captured by a mobile phone that is then processed using OCR, because that is the explicit disclosure of Garcia. That is all in one reference. That is what Garcia teaches. So those issues that were at issue in the MITAC proceeding, the issues that are addressed by the arguments with respect to Dance, just don't have an application here because the art is different. The arguments are different, and there's not this whole issue about a motivation to combine to get OCR of those images just isn't in play given the state of the art in 2003 with Garcia. I would also, to the extent there is an argument about the motivation to combine with Richardson, we think that it's readily supplied by the evidence that the board cited that was presented in the petition and supported by our expert, Dr. Noble. In particular, what we have here is Garcia, which teaches the check images captured by a mobile phone that are then processed by OCR, and the only question at that point is, well, what information do you actually read off the check using OCR? The board concluded the obvious thing to do is to read the numbers printed at the bottom of the check, which are in a special font that enables them to be machine read, and that is critical information for processing the check deposit. This is an issue that we've seen prop up across a number of these appeals today. The board made findings about why a person of skill in the art would be motivated to apply OCR to that given the importance of that information and the risk of error if you were to actually have that information entered manually because this is ultimately just a string of numbers. Turning to the signature issue, this is, the signature limitation is disclosed and taught by Randall, which teaches handling the endorsement on the back of the check differently from how you do the signature on the front. So all that Randall teaches, if you look at appendix page 1224, the figure on that page has box 124 that says endorsement, is it there? That is just a yes, no check to determine whether there is an endorsement mark present in the endorsement space. It is not checking for a signature and checking for the presence of an endorsement is different from checking for the presence of a signature and it's different from checking whose signature it is. And this wasn't an instance of the board relying on the references mere silence on this issue. The board recognized that the disclosure in Randall for how you handle the endorsement on the back of the check is different from how it discloses how you handle the signature on the front of the check where there is an additional step where the signature is actually compared against the signature on file, which is exactly the kind of signature verification step that the claim in the 136 patent says not to do. Our expert, Dr. Noble, said a person of skill in the art would understand that what the Randall reference is disclosing with respect to the back of the check and the endorsement is exactly what the 136 patent claims in view of those differences in how the reference handles the front and back of the check. And the board was well within its rights to accept that as reasonable and explained and supported by the record. So unless the court has any further questions for me, we'd submit this for the rest of this on the papers and just ask that you affirm. Judge Cunningham, anything further? Nothing further.  Thank you. Thank you, Your Honor. I'll start with the dance reference, and I would direct the court to Appendix 34, where – excuse me for a moment. At Appendix 34, the first full paragraph beginning Petitioner Notes, there was an argument that this dance reference is not an issue here because Garcia itself teaches OCR of the information required. Remember that the claim requires specifically OCR of the routing number at minimum. The board here says Petitioner Notes that Garcia's disclosure of check imaging and the incorporation of OCR equipment does not explicitly state the contents of the check includes the routing number, but that Richardson discloses OCR of the micro line and then relies on Richardson to supply – yes, Judge Cunningham. What is your response to a public counsel's argument that on page – Appendix 40, in addressing MITAC, in addressing dance? Well, there's certainly no reference to dance. To the extent it addresses MITAC, it mentions that the MITAC decision involved a different prior combination with a different motive to combine. I don't dispute that, but the motivation to combine here of Garcia with Richardson is impacted by the teachings of the dance reference, and the board does not grapple with that. It apparently casts that aside based on the MITAC IPR involving different issues. But it involved dance, right? It involved dance, among other references, and a different base reference, and so different issues. But nonetheless, the question here is – and the board there found that dance taught away from using a check image captured by a digital camera. But setting that aside, here, the question is, does the combination and the motivation relied on what I just read from you from Appendix 34, the relying on the combination of Garcia with Richardson, does dance discredit that motivation to combine those two references? And it does, or at least the board failed to explain why it did not. And a passing reference to the MITAC IPR being different doesn't satisfy the board's burden under the APA to resolve that. Can I just ask you one technical question? Because they're not citing to the MITAC case. They are explicitly citing to the discussion of IPR proceedings pursued by a third-party MITAC. And they go on to cite Patnona response 55 to 56. Is that the portion in which you were discussing dance? The portion, the teachings of dance I discussed earlier are actually on Patnona response 57 to 58. At 55 to 56, we introduced the MITAC IPR, explained that dance was at issue there, and acknowledged that the MITAC IPR involved different combinations and different motivations to combine. So I believe that's the citation. And that's what Pitchner said in his reply at 16. OK. And then they later cite Patnona response 57 and 58. And it's 40, right? At Patnona response 57 to 58, we discussed dance as well as Richardson teaching away. And so the board addresses the allegation that Richardson taught away. I'm sorry, it's not here. But 57 to 58 addresses dance in addition to other references, including Richardson, is the answer to your question. On the signature point, there was an argument made that the only difference in Randall from the front side of the check to the back is that on the back, it's not comparing anything to a signature on file. And just wanted to remind the court that the agreed claim construction of signature identification procedure, which is what is the negative limitation, includes both comparing a signature to something on file and determining the presence of the signature. So it's OK. I think we're out of time. Thank you. Thank you, Charles. That concludes our session for this afternoon.